UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RATES TECHNOLOGY INC.,

       Plaintiff,      **ORDER**
 vs.            05-CV-3583 (DRH) (WDW)

CABLEVISION SYSTEMS CORP.,

       Defendant.
----------------------------------------------------------X

**A P P E A R A N C E S :**

**BURKE, WILLIAMS & SORENSEN LLP**
Attorney for Plaintiff
444 South Flower Street, Suite 2400
Los Angeles, CA 90071
By: James B. Hicks, Esq.

**GOODWIN PROCTOR LLP**
Attorney for Defendant
599 Lexington Avenue
New York, NY 10022
By: Benjamin Hershkowitz, Esq.

**HURLEY, Senior District Judge:**

## BACKGROUND

**I.**  *Procedural Background*

  Plaintiff Rates Technology Inc. ("Plaintiff") filed this patent infringement case on July 29, 2005, alleging, inter alia, that the sale of Optimum Voice, Optimum Online VoIP and voice messaging services by Cablevision Systems Corp. ("Defendant") infringed upon two of Plaintiff's patents. Plaintiff seeks actual damages in the amount of $950 million and requests trebling to $2.85 billion under 35 U.S.C. § 284.

  On April 11, 2006, Defendant filed a motion to compel responses to document demands and interrogatories. Specifically, Defendant sought an order directing Plaintiff to produce any

licenses, settlement agreements, covenants not to sue, and other agreements between the Plaintiff and various non-parties concerning both of the patents at issue in this case. Plaintiff opposed the motion, primarily on the ground that discovery of such information would ultimately be inadmissible under Federal Rule of Evidence ("FRE") 408.

A.  *The Magistrate Judge's Order*

On April 14, 2006, Magistrate Judge William D. Wall granted Defendant's motion, finding that "the materials sought are discoverable in that they may lead to the discovery of admissible evidence, and [Plaintiff's] reliance on FRE 408 is, at best, premature." (Apr. 14, 2006 Order at 2.) The order provides in pertinent part as follows:

> During the course of this litigation, [Plaintiff] has bolstered its claims that its patents are universally accepted by stating that "over 120 companies have been covered under" the patents, and that [Plaintiff] has only had to litigate patent infringement claims "approximately 25 times out of some 740 covered companies." Having raised this information to its benefit, [Plaintiff] now seeks to bar inquiry into how or why those companies were "covered." Simply put, RTI cannot have it both ways.
>
> The court takes no position on whether the information sought will be admissible at trial. FRE 408 states, in part, that evidence [of] accepting "valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." In its opposition papers, [Plaintiff] repeatedly asserts that its agreements with non-parties are settlements and not licenses. Prior communications from RTI, however, characterize the agreements somewhat differently: "[o]ur past 'licensing' practice has been to grant Covenant Not To Sue ('CNS') agreements and not formal licenses, in exchange for one-time payments." It is possible that the documents at issue wouldn't be considered settlement materials under FRE 408. Since discovery is ongoing and the question of admissibility is not currently before the court, it is premature to make a determination as to the nature of [Plaintiff's] other "agreements."

(*Id.* at 2-3.) Judge Wall directed Plaintiff to produce any licenses, settlement agreements,

2

covenants not to sue, and other agreements between Plaintiff and various non-parties concerning both of the patents at issue.

### B. *This Court's October 20, 2006 Order*

Plaintiff appealed Judge Wall's decision to this Court. By Memorandum of Decision and Order dated October 20, 2006 (the "October 20, 2006 Order"), the Court affirmed Judge Wall's Order in its entirety and gave Plaintiff ten days to produce the relevant documents. Finding that Judge Wall's Order was neither clearly erroneous nor contrary to law, the Court stated:

> The premise of Plaintiff's objection – that these documents will be inadmissible at trial pursuant to FRE 408 – is, as Judge Wall correctly pointed out, premature and irrelevant to the question of discoverability before the Court. While Rule 408 of the Federal Rules of Evidence limits the introduction at trial of evidence regarding settlement negotiations, this rule does not itself govern discovery. Instead, settlement agreements are governed by Rule 26, which allows discovery thereof so long as such disclosure "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

(*Id.* at 5 (citations and internal quotation marks omitted).) Thus, even assuming that the documents at issue could be classified as settlement agreements, they would still be subject to discovery so long as Federal Rule of Civil Procedure ("Rule") 26 was satisfied. Here, that condition was met because in the patent context, "settlement of patent litigation may be functionally identical to a license." (*Id.* at 6 (citations and internal quotation marks omitted).) As the Court further explained:

> [I]n "settling" claims with alleged infringers, it is of no import that Plaintiff may have styled its agreements as "covenants not to sue" rather than licenses because in the patent context, "[a] license may amount to no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention." *Ortho Pharm. Corp. v. Genetics Inst. Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995).

(*Id.* at 6.) Thus, regardless of their classification, to the extent these agreements reflect the industry's acquiescence to Plaintiff's patents, they may be relevant to show the validity thereof.[1] (*Id.* n.1) Accordingly, the Court found that they may lead to the discovery of admissible evidence and were discoverable.

In the October 20, 2006 Order, the Court also rejected Plaintiff's argument that public policy concerns dictated that the documents, if settlement agreements, remain confidential. (*See id.* at 8 ("[A]lthough the Sixth Circuit may have recognized a settlement privilege under federal law, other 'courts have generally declined to recognize a privilege that would preclude discovery for the purpose of settlements or settlement negotiations,'" *Newman & Assocs. v. J.K. Harris & Co., LLC*, No. 04CV9264, 2005 WL 3610140, at *2 (S.D.N.Y. Dec. 15, 2005) (collecting cases), including the lower courts in this Circuit as well as other Circuit Courts of Appeals.").)

### C. *Plaintiff's Subsequent Applications*

Thereafter, Plaintiff moved for certification of this Court's October 20, 2006 Order so that it could seek an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff also sought a stay of the October 20, 2006 Order. Plaintiff argued:

> [W]hen [Plaintiff] entered into confidential settlements, it promised the other parties that it would keep those settlements confidential – indeed, often at the other's party demand. [Plaintiff] won't break its promises, especially since the Magistrate's April 14 Order is flat-out wrong . . . and [Plaintiff] would rather face terminating sanctions, and see this case dismissed, then produce confidential settlements in violation of its constitutional contract rights . . . .

(Letter by James B. Hicks, dated Oct. 24, 2006, at 1.)

---

[1] Notably, Plaintiff itself at one point characterized the agreements as licenses. (Apr. 14, 2006 Order at 2.)

4

By Order dated November 16, 2006, the Court denied Plaintiff's application and extended the time within which Plaintiff was to produce the relevant documents to December 1, 2006. That same day, Plaintiff submitted a second application to stay production of the documents, asserting that "Magistrate Wall's underlying order and this Court's October 20 and November 16 Orders are invalid." (Letter by James B. Hicks, dated Nov. 16, 2006, at 1.) Plaintiff repeated its intention not "to produce these documents, even if this case is dismissed as a result." (*Id.* at 2.)

By Order dated November 17, 2006, the Court directed Defendant to respond to Plaintiff's most recent application. The Court noted that because it intended "to move promptly on this matter, no stay [would] be granted at this time." (Nov. 17, 2006 Order.) Defendant responded by letter dated November 21, 2006, and Plaintiff replied by letter dated November 27, 2006.

By Order dated November 30, 2006, the Court found that none of Plaintiff's arguments had "any merit" and denied Plaintiff's request for a stay. (Nov. 30, 2006 Order at 2, 3.) Plaintiff was directed to produce all documents concerning any licenses, settlement agreements, covenants not to sue, or any other agreements concerning either or both of the patents at issue, on an "attorneys' eyes only" basis, on or before December 11, 2006. The Court noted that "[s]hould Plaintiff indicate to the Court that it will not comply with this Order, Defendant shall promptly advise the Court how it wishes to proceed." (*Id.* at 3.)

### D. *The Current Application*

By letter dated December 5, 2006, Plaintiff "respectfully note[d] that the orders requiring it to produce these documents are defective" and indicated that "it does not intend to produce those settlement agreements, even if this case is dismissed as a result." (Letter by James B.

5

Hicks, dated Dec. 5, 2006, at 1, 2.) By letter dated December 8, 2006, Defendant responded by moving for a dismissal of Plaintiff's claims with prejudice and an award of attorneys' fees and costs. (Letter by Benjamin Hershkowitz, dated Dec. 8, 2006, at 1.) In a footnote, Defendant also noted that under Rule 37(b)(2)(A), "the Court would be justified in light of [Plaintiff's] failure to produce, . . . for example, take as established that: (1) [Defendant's] suppliers are licensed and that [Defendant] is entitled to the benefit of those licenses; (2) that the license agreements do not support [Plaintiff's] damages theories; and (3) that [Plaintiff] cannot rely on secondary considerations to refute [Defendant's] obviousness defense." (*Id.* at 4 n.4.)

Plaintiff responded by stating that though it was aware that the Court would likely dismiss its case for refusing to produce the documents, it objected to Defendant's request for monetary sanctions because Plaintiff's refusal to comply with the various orders was "substantially justified." (Letter by James B. Hicks, dated Dec. 12, 2006, at 1, 2.) Plaintiff also objected to Defendant's suggestion that the Court take certain facts as established based upon Plaintiff' failure to produce the agreements. Finally, Plaintiff argued that if the Court did dismiss Plaintiff's complaint, it should also dismiss Defendant's counterclaim for declaratory relief as moot. (*Id.* at 1.)

By letter dated December 15, 2006, Defendant reiterated its request for monetary sanctions and for findings of fact in its favor. (Letter by Benjamin Hershkowitz, dated Dec. 15, 2006, at 1.) In addition, Defendant, for the first time, explicitly requested that the Court take the facts supporting its counterclaims as established. (*Id.*)

Plaintiff wrote a final letter on December 18, 2006, objecting to Defendant's request for judgment on its counterclaim as untimely, as Defendant "never requested such sanctions before." (Letter by James B. Hicks, dated Dec. 18, 2006, at 1.) In addition, Plaintiff "ask[ed] the Court to

6

dismiss its claims with prejudice if that is the necessary alternative to being forced to produce confidential settlements to untrustworthy adverse counsel." (*Id.* at 2.)

For the reasons stated below, the Court dismisses Plaintiff's claims with prejudice, declines to take facts supporting Defendant's counterclaims as established, and finds that Defendant is entitled to an award of attorneys' fees in an amount to be subsequently determined.

## DISCUSSION

**I.** *Plaintiff's Claims are Dismissed Pursuant to Rule 37(b)(2)(C)*

Rule 37 provides in pertinent part as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
> . . . .
>
> > (C) An order . . . dismissing the action or proceeding . . . .

Fed. R. Civ. P. 37(b)(2) (C). The imposition of sanctions under Rule 37 lies within the broad discretion of the district court. *See, e.g., Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir. 1987). "[D]ismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault on the part of the [sanctioned party]." *Bobal v. Rensselaer Polytechnic Inst.,* 916 F.2d 759, 764 (2d Cir. 1990) (citations and internal quotation marks omitted). As the Supreme Court has noted, however, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643 (1976); *see also Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)

7

(affirming magistrate judge's decision to award summary judgment against party who failed to comply with discovery orders: "[W]e wish to emphasize the importance we place on a party's compliance with discovery orders. Such compliance is necessary to the integrity of our judicial process. A party who flouts such orders does so at his peril. If one suggests that our decision today is strong medicine, that is precisely what it is intended to be.").

The record in this case demonstrates Plaintiff's sustained and wilful refusal to comply with multiple court orders to produce the agreements at issue based upon Plaintiff's belief that the orders are "flat-out wrong" and "invalid." Such blatant disregard for the rules and procedures of this Court clearly demonstrates willfulness and bad faith. Accordingly, the Court finds that dismissal of Plaintiff's claims with prejudice is warranted under Rule 37.[2]

## II.     *Defendant's Counterclaims Rule 37(b)(2)(A)*

### A.     *The Counterclaims are not Dismissed for Lack of Subject Matter Jurisdiction*

Defendants' Answer asserts four counterclaims, to wit: (1) declaratory judgment that Defendant has not infringed upon Plaintiff's patents; (2) declaratory judgment that Plaintiff's patents are invalid; (3) declaratory judgment that Plaintiff's patents are unenforceable due to inequitable conduct; and (4) declaratory judgment that Plaintiff is barred from maintaining this action under the doctrine of unclean hands. Plaintiff moves for dismissal of Defendant's counterclaims, arguing that should the Court dismiss Plaintiff's complaint with prejudice, Defendant's counterclaims will be moot and the Court will lack subject matter jurisdiction over them pursuant to *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir.

---

[2] Plaintiff cannot claim that it is unfairly surprised by the Court's dismissal of its claims as Plaintiff has repeatedly petitioned for such relief as an alternative to being required to produce the documents.

1995).

In *Super Sack*, the Federal Circuit held that a patentee's promise not to "assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts" divests the court of jurisdiction over the case. *Id.* at 1058. The court reasoned that the patentee's covenant not to sue resolved the actual controversy between the parties, i.e., the question of infringement of the actual patent, such that the court no longer had jurisdiction to hear a declaratory judgment action regarding the validity or enforceability of the patent. *Id.*

Here, Plaintiff has not filed a covenant not to sue Defendant for infringement based upon its patents. Moreover, although this Court has dismissed Plaintiff's claims with prejudice, Plaintiff has "reserve[d] its right to appeal a dismissal." (Letter by James B. Hicks, dated Dec. 12, 2006, at 1 n.1.) Thus, as opposed to the circumstances present in *Super Sack*, where the patentee was "forever estopped . . . from asserting liability against" the alleged infringer and thus had no "reasonable apprehension that it [would] face an infringement suit," 57 F.3d at 1059, the possibility of suit against Defendant has not been permanently foreclosed. Accordingly, based on the argument proffered, the Court declines to dismiss Defendant's counterclaims for lack of subject matter jurisdiction.

    **B.**   *The Court Declines to Award Judgment to Defendant on its Counterclaims*

Rule 37(b)(2)(A) provides that if a party fails to obey a discovery order, the Court may issue "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." As noted above, by Order dated November 30, 2006, the Court directed Defendant to "promptly advise the Court how it wishe[d] to proceed" with regard to Plaintiff's failure to produce the documents. Defendant responded by moving for dismissal of

Plaintiff's claims with prejudice and an award of attorneys' fees and costs. In a footnote, Defendant noted that the Court would "also be justified" in taking certain facts as established pursuant to Rule 37(b)(2)(A). It was not until Plaintiff responded, by letter dated December 12, 2006, and requested dismissal of Defendants' counterclaim, that Defendant explicitly moved the Court to "take facts supporting [its] counterclaims as established." (*See* Letter by Benjamin Hershkowitz, dated Dec. 15, 2006, at 1.)

In the Court's view, Defendant's sparsely-worded letter application has not satisfactorily explained why this Court, in the exercise of its discretion, should grant Defendant's request. Essentially, Defendant asks this Court to take as established that its suppliers are covered under the unproduced licenses and that Defendant is therefore entitled to the benefit thereof. Such a factual finding would effectively result in judgment in Defendant's favor on its first counterclaim that it has not infringed upon Plaintiff's patents. The Court has already found that Plaintiff is not entitled to the affirmative relief it seeks in its Complaint based upon its discovery violations. Defendant now asks the Court to go one step further and find that Defendant's position is correct. At this juncture, and based upon the papers submitted, the Court declines to do so. Accordingly, Defendant's application to take facts supporting its counterclaims as established pursuant to Rule 37(b)(2)(A) is denied.

    C.    *Attorneys' Fees*

Defendant moves for an award of attorneys' fees under Rule 37(b), which provides, in pertinent part:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other

circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b). Plaintiff's opposition to such an award is twofold. First, Plaintiff argues that its resistance was "substantially justified." Next, Plaintiff raises due process objections, claiming that Defendant failed to provide it with sufficient notice and that Plaintiff has not had an adequate opportunity to respond.

Plaintiff's first objection is easily disposed of. The Court has repeatedly found that Plaintiff's position has no merit because even if the documents at issue could be characterized as settlement agreements, they are still subject to discovery pursuant to Rule 26. Plaintiff's refusal to comply with these orders based upon its opinion that they are "invalid" cannot be countenanced. Accordingly, the Court finds that Plaintiff has not offered adequate justification for its conduct.

As for Plaintiff's due process argument, the Court notes that "[a]s a general rule, a court is not obliged to give a formal warning that sanctions might be imposed for violation of the court's orders." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 128 F.3d 99, 102 (2d Cir. 1997). Further, because Defendant brought its sanctions application under Rule 37, which expressly provides that the Court "shall" impose monetary sanctions under specified circumstances, Plaintiff clearly had notice of the possibility of such sanctions. *See id.* Accordingly, the Court finds that an award of attorneys' fees is warranted in this case. Nonetheless, given Defendant's complete failure to support its fee application with *any* specifics, including what fees it is seeking, for what work, at what hourly rate, etc., the Court cannot make a fee determination on the present record. Accordingly, this matter is respectfully referred to Magistrate Judge Wall for a report and recommendation on the proper amount of attorneys' fees to be awarded.

## CONCLUSION

For the foregoing reasons, the Court So Orders the following relief: (1) Defendant's application to dismiss Plaintiff's claims with prejudice pursuant to Rule 37(b)(2)(C) is granted; (2) Defendant's application to take facts supporting its counterclaims as established pursuant to Rule 37(b)(2)(A) is denied; and (3) Defendant's application for attorneys' fees is granted and the matter is respectfully referred to Magistrate Judge Wall for a report and recommendation on the proper amount of attorneys' fees to be awarded.

Plaintiff is directed to advise the Court what effect, if any, this decision has on its pending magistrate judge appeal, docket number 79.

**SO ORDERED**.

Dated:   April 20, 2007
           Central Islip, New York          /s
                                                                   Denis R. Hurley
                                                                     United States District Judge